ORIGINAL

R. Todd Ingram, WY State Bar #6-3910
Metier Law Firm, LLC
259 South Center, Suite 301
Casper, Wyoming 82601
Telephone: (307) 237-3800
Facsimile: (970) 225-1476
E-mail: todd@metierlaw.com

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 OCT 27 PM 3:06

STEPHAN HARRIS, CLERK
CHEYENNE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

SALLY MARRINER, Individually, and as the Wrongful Death Representative for MATTIE L. SCOTT, Deceased, and on behalf of SUZANNE COLLETTE, LISA WAITS, LAUREL MAHONEY, CHAY ANNE STROHECKER, KRISTINA GRAY, MICHELLE DAHARSH BRUSO, ANTHONY COLLETE, MATTHEW COLLETTE, and RACHEL TRUJILLO-MEYERS, individually and jointly,

Plaintiffs,

-vs-

17-CV-180-F

CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, CHEVRON U.S.A., INC., CLEAVER-BROOKS, INC. f/k/a CLEAVER-BROOKS, a division of Aqua-Chem, Inc., FOSTER WHEELER ENERGY CORPORATION (sued individually and as successor-in-interest to C.H. WHEELER), GEORGIA-PACIFIC, LLC, HUNTSMAN PETROCHEMICAL, LLC, f/k/a TEXACO CHEMICAL COMPANY, RILEY POWER, INC., f/k/a RILEY STOKER CORPORATION, TEXACO, INC., UNION CARBIDE CORPORATION, and ZURN INDUSTRIES, LLC,

Defendants,

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff, Sally Marriner, in her capacity as wrongful death representative, through counsel, submits the following Complaint and Jury Demand:

## PARTIES, JURISDICTION, AND VENUE

1. Decedent, Mattie L. Scott, was a citizen of the State of Wyoming and resident of Casper, Wyoming and died on July 16, 2015 as a direct result of injuries she sustained as a result of asbestos exposures she incurred in Casper, Wyoming.

2. Plaintiff, Sally Marriner, the surviving child of Decedent Mattie L. Scott, is a citizen of the State of Illinois and resides in Elgin, Illinois.

3. Plaintiff Sally Marriner is the duly qualified and appointed Wrongful Death Representative of Plaintiff's Decedent, having been so appointed on October 2, 2017 by the District Court of the Seventh Judicial District of the State of Wyoming in and for Natrona County in Civil No. 1033227. A certified copy of the Court's Order Appointing Sally Marriner As Wrongful Death Representative is attached hereto as Exhibit A and is incorporated as if fully set forth herein.

4. Plaintiff brings this action pursuant to the Wyoming Wrongful Death Act, W.S. §§ 1-38-101 through 105, on behalf of the heirs and wrongful death beneficiaries of Plaintiff's Decedent Mattie L. Scott. Mattie Scott's heirs and wrongful death beneficiaries are her daughters: Sally Marriner and Suzanne Collette, and her grandchildren: Lisa Waits, Laurel Mahoney, Chay Ann Strohecker, Kristina Gray, Michelle Daharsh Bruso, Anthony Collette, Matthew Collette, and Rachel Trujillo-Myers.

5. At all relevant times, Defendant CBS Corporation f/k/a Westinghouse Electric Corporation was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Pennsylvania, and doing business in Natrona County and in the State of Wyoming.

6. At all relevant times, Defendant Chevron U.S.A., Inc. was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Pennsylvania, and doing business in Natrona County and in the State of Wyoming.

7. At all relevant times, Defendant Cleaver-Brooks, Inc. f/k/a Cleaver-Brooks, a division of Aqua-Chem, Inc. was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Ohio, and doing business in Natrona County and in the State of Wyoming.

8. At all relevant times, Defendant Foster Wheeler Energy Corporation (sued individually and as successor-in-interest to C.H. Wheeler) was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Delaware, and doing business in Natrona County and in the State of Wyoming.

9. At all relevant times, Defendant Georgia-Pacific, LLC was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Delaware, and doing business in Natrona County and in the State of Wyoming.

10. At all relevant times, Defendant Huntsman Petrochemical, LLC f/k/a Texaco Chemical Company was, and is, a foreign corporation created under and existing by virtue of the laws of the State of New Jersey, and doing business in Natrona County and in the State of Wyoming.

11. At all relevant times, Defendant Riley Power, Inc. f/k/a Riley Stoker Corporation was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Massachusetts, and doing business in Natrona County and in the State of Wyoming.

12. At all relevant times, Defendant Texaco, Inc. was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Delaware, and doing business in Natrona County and in the State of Wyoming.

13. At all relevant times, Defendant Union Carbide Corporation was, and is, a foreign

corporation created under and existing by virtue of the laws of the State of New York, and doing business in Natrona County and in the State of Wyoming.

14. At all relevant times, Defendant Zurn Industries, LLC was, and is, a foreign corporation created under and existing by virtue of the laws of the State of Delaware, and doing business in Natrona County and in the State of Wyoming.

15. Defendants are corporations, or successors in interest to such corporations, who are citizens of (i) Wyoming or (ii) states other than Wyoming, who have either obtained certificates of authority to transact business in Wyoming pursuant to Section 17-16-1501 (Wy. Code Ann.) or who transacted business in Wyoming without a certificate of authority, but within the contemplation of Section 17-16-1502 of said Code, or (iii) have committed a tort in whole or in part in the State of Wyoming or done business in Wyoming or contracted to provide goods or services which establish minimum contacts sufficient to establish jurisdiction over the Defendants by this Honorable Court and in consideration of all constitutional requisites, state and federal, of in personal and subject matter jurisdiction.

16. During all or part of the period that Decedent's husband worked at facilities in and/or near Casper, Wyoming, he worked with, or was otherwise exposed to, asbestos and asbestos-containing products.

17. The amount in controversy, without interest and costs, exceeds the sum of $75,000, and this Court has original diversity jurisdiction over this civil action under 28 U.S.C. § 1332.

18. Venue is appropriate in the United States District Court for the District of Wyoming under 28 U.S.C. § 1391 because the acts and omissions which form the basis of this Complaint occurred in the District of Wyoming.

**GENERAL ALLEGATIONS**

19.     Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 - 18 of this Complaint, and, in addition, alleges the following:

20.     Plaintiff's Decedent Mattie L. Scott was diagnosed with mesothelioma on March 18, 2015.

21.     Plaintiff's Decedent Mattie L. Scott was exposed to asbestos and/or asbestos-containing equipment and/or products and raw materials through her husband, Kermit Owen Scott, during his work as a Boiler Fireman and a Boiler Foreman at Texaco's Evansville, Wyoming refinery (hereafter "Texaco" or "Texaco refinery") from 1951 to 1982. Mattie Scott's husband, on many occasions, would work with and around asbestos and asbestos-containing products. Dust created by working with and around asbestos and asbestos-containing products would permeate the person and clothing of the Decedent's husband. This dust contained asbestos fibers. Decedent's husband would carry this asbestos dust on his person and clothing home with him where it would become airborne again. Decedent would be repeatedly exposed to this asbestos dust from her husband's person and clothing. Decedent was also exposed to asbestos-containing dust which escaped from the premises of Texaco's Evansville, Wyoming refinery and blew onto Decedent's property, where she was exposed to asbestos-containing dust from Texaco's Evansville, Wyoming refinery. Decedent was also exposed to asbestos from Georgia-Pacific joint compounds.

22.     Plaintiff's Decedent Mattie L. Scott was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

23.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, mesothelioma, and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-

containing products over a period of time.

24. Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an "alternate entity" as hereinafter defined. Defendants are liable for the acts of the "alternate entity" and each of them, in that there has been a corporate name change, Defendants are the successors by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiff's remedy against each such "alternate entity;" Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity;" such "alternate entities" have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity;" each such Defendant has the ability to assume the risk-spreading role of each such "alternate entity;" and that each such defendant enjoys the goodwill originally attached to each "alternate entity."

25. During the exposure period at the named facilities, each of the Defendants used, employed, designed, tested, evaluated, manufactured, packaged, furnished, supplied and/or sold adhesives, construction materials, insulation, plastics or other products that each contained fibrous, incombustible, chemical resistant, mineral substances commonly called 'asbestos', or Defendants used, employed, designed, manufactured, distributed or sold machinery or equipment containing asbestos and/or specified said asbestos to be used on said machinery or equipment, or materially assisted or aided or abetted others in so doing for use at or near the named facilities at which Plaintiff's Decedent's husband worked. All references to 'asbestos' in this complaint shall mean and be limited to the Defendants' and their alternate entities products described and used at the named facilities.

26. Certain of Defendants herein also developed, manufactured, assisted in the manufacture

6

of and/or provided specifications for the finishing manufacture and/or fabrication of asbestos-containing products for a variety of industrial and consumer uses. Including, but not limited to: heat-, corrosion- and/or acid-resistant plastics for use in the chemical, textile, steel, paper/pulp, and electroplating industries, piping, associated fixtures and valve housings, seats, and discs, pump and electrical motor parts and insulation, crystallizers, scrubbers, fume hoods, stacks, thermo-compressors, troughs, distribution trays, flumes, heaters, linings, baffles, dippers, drip pans, dyeing machines, filter press parts, filters and filtering media, anti-friction bearings, gears, spools, spinning pots, conveyer rollers and winder parts, vessels such as towers, kettles, tanks, cells, condensers, agitators and precipitators; bonded grinding wheels and other abrasives; bonded friction materials, including brake linings and clutch facings; floor tiles; electrical insulation and arc panels; machine and instrument housing, Insulator boxes and indicator dials; pads, risers, and blocks for use in expansion joints and equipment mounts as protection against vibration and/or mechanical shock; insulating ductwork and associated fittings; amature detectors and electric railway equipment; sealers, mastics and caulking compounds; reinforced automobile body panels and automobile body fillers; cellular or 'foamed' plastic for insulation, soundproofing, and bonding; adhesive and/or binding resins for particle board, flooring, floor tiles, batt insulation of all types and plywood and wood-to-plywood joints and seams; laminated millboard, wallboard, paneling, counter and table tops; reinforced plastic cements, paints, and roof coatings; and ordinary household electrical fixtures and utensil and appliance handles.

27. All Defendants and their alternate entities named below are liable to the Plaintiff for causing asbestos-induced disease to Decedent Mattie L. Scott. Mattie L. Scott was exposed through her husband, Kermit Owen Scott, during his work at the named facilities. Decedent also exposed to asbestos-containing dust which escaped from the premises of Texaco's

Evansville, Wyoming refinery and blew onto Decedent's property, where she was exposed to asbestos-containing dust from Texaco's Evansville, Wyoming refinery. Decedent was also exposed to asbestos from Georgia-Pacific joint compounds.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### *NEGLIGENCE*

28. Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 – 27 of this Complaint, and, in addition, alleges the following:

29. Plaintiff alleges negligent conduct and misconduct on behalf of Texaco's Evansville, Wyoming refinery in failing to ensure that employees did not carry asbestos-containing dusts home on their clothing, thus exposing employees' families to asbestos from Texaco refinery in their own homes. Specifically, Texaco's Evansville, Wyoming refinery was negligent in:

   a. failing to provide Texaco refinery employees, including Kermit Scott, with work clothes, showers, changing facilities, and/or laundering facilities in order to prevent or reduce take-home asbestos exposures from occurring in Texaco refinery employees' homes and on Texaco refinery employees' way to and from work at 's facilities.

   b. to train, inform, and educate Texaco Refinery employees, including Kermit Scott, of the dangers, hazards, and risks of asbestos-containing products, asbestos-containing dust, asbestos, and/or take home asbestos exposures in order to reduce or prevent their asbestos exposures and/or in order to prevent their carrying asbestos fibers home on their clothing and exposing their family members to asbestos fibers from the Texaco refinery;

   c. failing to implement and enforce safety guidelines to reduce or prevent asbestos

exposures to Texaco Refinery's employees, including Kermit Scott; and

 d. to isolate work with asbestos-containing products, in order to reduce or prevent asbestos exposure to other Texaco Refinery employees, including Kermit Scott;

 e. to provide its employees, including Kermit Scott, with respirators to reduce or prevent their asbestos exposures when they were working in proximity to asbestos-containing materials;

 f. to protect Texaco Refinery employees, including Kermit Scott, from asbestos exposures;

 g. to wet down asbestos-containing products, in order to reduce or prevent asbestos exposures to Texaco Refinery employees, including Kermit Scott;

 h. to comply with all applicable Wyoming and U.S. laws and regulations regarding workplace exposure to asbestos;

 i. to implement control measures to reduce or prevent Texaco Refinery employees' exposures to asbestos in the work place;

 j. to train Texaco Refinery employees in asbestos safety measures, in order to reduce or prevent asbestos exposures;

 k. to provide Texaco Refinery employees with safety equipment adequate to reduce or prevent asbestos exposures;

 l. to supervise and ensure compliance with all applicable asbestos safety regulations and guidelines, in order to reduce or prevent Texaco Refinery employees' asbestos exposures;

30. Plaintiff alleges negligent conduct and misconduct on behalf of Texaco's Evansville, Wyoming refinery in failing to prevent the escape of asbestos-containing dusts from the

premises of Texaco's refinery, in failing to prevent airborne asbestos-containing dusts generated at Texaco's refinery from contaminating the area surrounding Texaco's refinery, and in exposing neighboring residents to airborne asbestos-containing generated at Texaco's refinery.

31. Each of the Defendants had, and breached, duties to the Plaintiff and Plaintiff's Decedent to exercise the highest standard of care in using, employing, designing, testing, manufacturing, marketing, selling, utilizing and abating asbestos and/or equipment or machinery containing asbestos, which is an extraordinary and inherently dangerous substance. The breached duties included, without limitation, the duty:

   a. To select available alternate materials that would reduce or eliminate health hazards to those who work with, and in the vicinity of asbestos;

   b. To warn adequately of the extraordinary health hazards known by the Defendants to be associated with asbestos use;

   c. To instruct adequately in methods of using asbestos that would reduce the danger of inhalation or ingestion of asbestos dust;

   d. To test adequately the asbestos products to determine the dangers concomitant with their use;

   e. To remove the asbestos products from the stream of commerce upon discovering their dangerous properties;

   f. To inspect the asbestos products for adequate warnings and instructions;

   g. To test adequately the air for asbestos in all areas where asbestos was abated by Defendant, and subsequently to warn adequately anyone who will be in the vicinity of the abated area of the health hazards known to Defendant of exposure to asbestos, if any was detected during said testing; and

   h. As a direct and proximate result of the Defendants' aforesaid breaches of their duties to Plaintiff, Mattie L. Scott, sustained the injuries and damages described in this Complaint.

32. In breaching, and/or conspiring with, aiding, abetting or materially assisting others in breaching, their duties to Plaintiff, as described above, Defendants acted intentionally and/or

with gross negligence, and/or recklessly, maliciously and wantonly in that Defendants and each of them knew or should have known through data available exclusively to them that asbestos was inherently and extraordinarily dangerous if used in the manner intended and foreseen by Defendants, and that each of their aforesaid breaches of duty would result in the complained injuries to the decedent.

33. Plaintiff prays judgment against Defendants in a fair and reasonable amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), in an amount to be determined by a jury at trial, together with costs herein expended, and for any further relief this Court deems just and proper.

## SECOND CAUSE OF ACTION
### *STRICT LIABILITY*

34. Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 - 33 of this Complaint, and, in addition, alleges the following:

35. Mattie Scott was exposed to asbestos-containing dusts from asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in commercial and industrial operations. Plaintiff would show that the defective condition of the products rendered such products unreasonably dangerous, and that the asbestos-containing products and/or machinery were in this defective condition at the time they left the hands of Defendants.

36. The Defendants are engaged in the business of selling asbestos-containing products and/or machinery requiring or calling for asbestos or asbestos-containing products, and these asbestos-containing products and/or machinery, without substantial change in the condition in

11

which they were sold, were a proximate cause of the injuries of Plaintiff.

37. Defendants knew that these asbestos-containing products and/or machinery would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation and/or installation of the asbestos-containing products and/or operation, maintenance and/or repair of the machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

38. Mattie Scott and Kermit Scott were unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation. Similarly, Mattie Scott and Kermit Scott were unaware of the hazards and defects in the machinery requiring or calling for the use of asbestos and/or asbestos-containing materials.

39. During the periods that Mattie Scott and Kermit Scott were exposed to the asbestos-containing products and/or machinery of the Defendants, these asbestos-containing products and/or machinery were being utilized in a manner which was intended by Defendants.

40. Defendants and/or their alternate entities were engaged in, or materially participated with others in the business of selling and/or utilizing asbestos; materials containing asbestos; and specifying the use of asbestos on machinery or equipment which were expected to and did reach the named facilities at which Plaintiff's Decedent's husband worked without substantial change in the condition in which it/they were sold, and from whence asbestos dusts were caused to be inhaled and ingested by Decedent Mattie L. Scott in connection with her husband's work.

41. The asbestos and machinery or equipment was in a defective condition and unreasonably dangerous to Kermit Scott and Mattie Scott, who were intended and foreseeable users,

bystanders, and/or household members exposed to the use of asbestos. These defects include, without limitation, the following:

    a. Inherent and known properties common to the asbestos sold by Defendants that gave it unreasonably high potential for causing respiratory diseases, cancer and other health problems to workers or members of such workers' households who would be exposed to asbestos;

    b. Lack of warnings or lack of sufficient warning by Defendants, who were in a position of superior knowledge concerning the dangerous properties of asbestos when used for the purpose for which it was manufactured and sold, and which dangerous propensities were unknown to Kermit Owen Scott, Mattie L. Scott, and Plaintiff;

    c. Lack of instructions or lack of sufficient instructions by Defendants for eliminating or minimizing the health risks inherent in the use of asbestos;

    d. Lack of reasonable inspections by Defendants of their asbestos products to ensure that such asbestos products contained sufficient warnings of the dangerous properties of asbestos;

    e. Lack of reasonable inspections by Defendants of their asbestos products to ensure that such asbestos products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of asbestos;

    f. Lack of tests or lack of sufficient tests by Defendants to determine and/or eliminate the harmful effects of asbestos on intended users and bystanders;

    g. Defective designs by Defendants calling for the inclusion of asbestos in products that did not require asbestos, and where alternate, equally suitable substances were available;

    h. Lack of warnings or lack of sufficient warnings by Defendants upon their discovering the full extent of the dangers presented by asbestos containing materials and products.

42. Each of the Defendants knew, or should have known, that workers such as Kermit Scott would be exposed to their asbestos products and would go on to expose members of their households, such as Decedent Mattie L. Scott, to their asbestos. By marketing the asbestos, and machinery or equipment specifying the use of asbestos, Defendants represented to Decedent, Decedent's husband, and to the public, who justifiably relied thereon, that asbestos was not

dangerous.

43. The defective conditions of Defendants' asbestos products proximately caused or proximately contributed to Plaintiff's injuries and damages as described in this complaint.

44. Plaintiff prays for judgment against Defendants in a fair and reasonable amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), in an amount to be determined by a jury at trial, together with costs herein expended, and for any further relief this Court deems just and proper.

## **DAMAGES**

45. Plaintiff incorporates herein by reference each and every allegation contained in paragraphs 1 - 44 of this Complaint, and, in addition, alleges the following:

46. As a direct and proximate result of Defendants' wrongful acts and/or omissions as described above, Mattie L. Scott died. Accordingly, Plaintiff, and those entitled to assert claims for damages in this matter, were damaged, and are entitled to recover the following damages, to include without limitation:

    a. Judgment against Defendants for funeral and burial expenses, and for all economic and pecuniary losses, in amounts to be established by the evidence at trial;

    b. Judgment against Defendants for general damages in amounts to be established by the evidence at trial;

    c. Judgment against Defendants for loss of care and love in amounts to be established by the evidence at trial;

    d. Judgment against Defendants for loss of comfort in amounts to be established by the evidence at trial;

    e. Judgment against Defendants for loss of companionship in amounts to be established by the evidence at trial;

    f. Judgment against Defendants for loss of support in amounts to be established by the evidence at trial;

g.  Judgment against Defendants for loss of association and society in amounts to be established by the evidence at trial;

h.  Judgment against Defendants for loss of protection in amounts to be established by the evidence at trial;

i.  Judgment against Defendants for loss of advice in amounts to be established by the evidence at trial;

h.  Judgment against Defendants for loss of decedent's life in amounts to be established by the evidence at trial;

j.  Emotional distress, suffering, and grief associated with decedent's death itself in amounts to be established by the evidence at trial;

k.  Emotional distress, suffering, and grief associated with the loss of decedent's care, love, comfort, companionship, support, association, society, protection, and advice as described above;

l.  Judgment against each Defendant for punitive damages in a fair and reasonable amount, based upon each such Defendant's conduct and net worth;

m.  Judgment against Defendants for prejudgment interest upon all elements of damage which are liquidated;

n.  Judgment against Defendants for Plaintiff's recoverable costs incurred in prosecuting this action.

o.  Such other and further relieve as the Court deems just and equitable.

47. Plaintiff prays for judgment in their favor and against Defendants for such damages as shall be proven at trial; together with costs herein expended; a trial by jury as demanded in a separate document; together with the costs of this action; and for such other and further relief as this Court deems just and proper in the premises.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues raised herein pursuant to Federal Rule of Civil Procedure 38(B).

**DATED** October 27th, 2017.           Respectfully submitted:

*/s/ R. Todd Ingram*

R. Todd Ingram, WY State Bar #6-3910
METIER LAW FIRM, LLC
259 South Center, Suite 301
Casper, Wyoming 82601
Telephone: (307) 237-3800
Facsimile: (970) 225-1476
E-mail: todd@metierlaw.com

IN THE DISTRICT COURT OF THE SEVENTH JUDICIAL DISTRICT

OF THE STATE OF WYOMING IN AND FOR NATRONA COUNTY

Civil No. 103327

In the Matter of the Appointment of )
SALLY MARRINER as the Wrongful )
Death Representative for )
                                    )
MATTIE L. SCOTT, )
                                    )
Deceased. )

FILED OCT 02 2017
Gen Tuma Clerk of District Court
By: BRANDY PORTER
Deputy

CERTIFIED COPY

## ORDER APPOINTING SALLY MARRINER AS WRONGFUL DEATH REPRESENTATIVE

This matter came before the Court upon the petition of Sally Marriner to be appointed as the wrongful death representative for proceedings relevant to the death of her mother, Mattie L. Scott. Based upon the Court's review of the materials on file herein, the Court FINDS as follows:

1. Mattie L. Scott died of mesothelioma in Natrona County, Wyoming on July 17, 2015.

2. At the time of her death, Mattie L. Scott was a resident of Natrona County, Wyoming.

3. The wrongful death beneficiaries identified by the petitioner in regard to Mattie L. Scott's death are her two daughters Sally Marriner and Suzanne Collette, and her grandchildren Lisa Waits, Laurel Mahoney, Chay Anne Strohecker, Kristina Gray, Michelle Daharsh Bruso, Anthony Collette, Matthew Collette and Rachel Trujillo Myers.

4. Acknowledgement and Consent forms have been filed demonstrating that Suzanne Collette, Lisa Waits, Laurel Mahoney, and Rachel Trujillo Myers have been provided notice of the Petition and that they consent to the appointment of Sally Marriner as the wrongful death representative herein.

5. The requirements of Section 1-38-105(a), W.S. 1977 as amended, have been satisfied as evidenced by the Proof of Publication that has been filed herein.

6. No person has intervened or taken exception to the appointment of Sally Marriner as the wrongful death representative herein.



PLAINTIFF'S EXHIBIT A

7. The Court has reviewed the factors itemized in Section 1-38-104, W.S. 1977 as amended, and determines that Sally Marriner is the person who will best represent the interests of the potential beneficiaries of the prospective wrongful death claims as a whole.

IT IS HEREBY ORDERED that Sally Marriner shall be, and hereby is, appointed the wrongful death representative for the purpose of pursuing claims for the wrongful death of Mattie L. Scott, deceased.

IT IS FURTHER ORDERED that Sally Marriner, within 60 days after appointment, shall file with the Court a report listing all reasonably ascertainable beneficiaries and set forth all reasonable efforts made by her to notify such beneficiaries of the wrongful death representative's appointment.

Dated this 2 day of October, 2017.

Catherine E. Wilking
_____
CATHERINE E. WILKING
DISTRICT COURT JUDGE